1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THERESA MAINS, ESQ.
Nevada Bar No. 13373
6980 O'Bannon Drive
Las Vegas, Nevada 89117
Telephone: (702) 267-6500
Mobile: (954) 520-1775
Email:  theresa@theresamainspa.com

GREGORY W. STEVENS
Utah State Bar. No. 7315
2825 East Cottonwood Parkway
Suite 500
Cottonwood Corporate Center
Salt Lake City, UT 84121-7060
Telephone:  (801) 990-3388
Email:  utlaw@aol.com

*Attorneys for Plaintiff*
*Adrian A. Sampson*

*(Gregory W. Stevens will comply*
*with LR IA 11-2 within 14 days.)*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

ADRIAN A. SAMPSON,

    *Plaintiff*,

vs.

KONICA MINOLTA BUSINESS
SOLUTIONS U.S.A., INC.,

    *Defendant*.

Case No.

**COMPLAINT**
(JURY DEMAND)

        As and for this Complaint against Konica Minolta Business Solutions U.S.A., Inc.

("KMBS" or the "Defendant"), Plaintiff Adrian A. Sampson ("Mr. Sampson" or the "Plaintiff"),

by and through his undersigned counsel, alleges as follows:

**NATURE OF THE CASE**

1. This civil action states a claim for damages to Mr. Sampson caused by KMBS's disparate treatment of him in the terms and conditions of his employment based on his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (also cited as "Section 1981"); and for damages caused by his termination by KMBS in retaliation for his having voiced opposition to practices that he reasonably believed to be unlawful by Title VII and Section 1981.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction over this civil action based on the following provisions: (a) 28 U.S.C. § 1331, because this action arises under the laws of the United States; (b) 28 U.S.C. § 1343, because this action arises under laws of the United States providing for equal rights; (c) 42 U.S.C. § 2000e-5(f), because this action arises under Title VII and Section 1981; and (d) 28 U.S.C. § 1332, because the parties are citizens of different States and the amount in controversy is greater than $75,000.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant's place of business at which the cause of action arose is within the jurisdiction of this Court, a substantial part of the event or omissions giving rise to the claim set forth in this Complaint arose within the jurisdiction of this Court, and KMBS is subject to personal jurisdiction at the time of the commencement of this action and there is no other district in which the action may otherwise be brought.

**PARTIES**

4. Plaintiff Adrian Sampson is, and at all times relevant to the allegations set forth in this Complaint has been, a citizen of the United States and resident of the State of Nevada, residing in Las Vegas, Nevada.

5. Defendant KMBS, upon information and belief, is, and, during all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint was, a corporation that (a) has a main corporate office located at 100 Williams Drive Ramsey, NJ 07446; (b) has an office located in Las Vegas, Nevada, where Mr. Sampson had worked prior

to his termination, located at  6560 South Tioga Way, Suite 100, Las Vegas, Nevada 89113;
(b) is imaging and networking technologies for small and large businesses, production facilities,
non-profit and faith-based entities, and local and county government offices; and (c) employed
Mr. Sampson prior to his termination within the Las Vegas, Nevada area at KMBS's office
located in Las Vegas, Nevada.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6.  On December 19, 2019, based on the events described in and giving rise to this
Complaint, Mr. Sampson filed a timely charge with the United States Equal Employment
Opportunity Commission ("EEOC"), stating claims of unlawful discrimination and retaliation
in violation of Title VII.

7.  On or after October 29, 2020, following his request for a Notice of Right to Sue,
Mr. Sampson received a proper Notice from the EEOC, signifying the exhaustion of his
administrative remedies under Title VII as to his claims of discrimination and retaliation.

8.  A copy of the Notice of Right to Sue is being filed with this Complaint as Exhibit A,
reflecting the satisfaction of the jurisdictional prerequisite to Mr. Sampson's claims under Title
VII.

**EVENTS REQUIRING RELIEF**

***Introduction***

9.  Mr. Sampson, who is African-American, was employed by KMBS as a "Legal
Specialist," a "National Account Executive ("NAE"), from November 20, 2017 until he was
terminated on December 10, 2019.

10.  In that position, Mr. Sampson was responsible for generating new business in the
legal market and servicing existing customers and in an assigned zip code territory; and, in so
doing, generating sales of KMBS's products and services.

11.  Throughout his tenure with KMBS, Mr. Sampson performed his job well, to the
extent possible with the support, or lack thereof, that he was provided.

12.  Throughout Mr. Sampson's tenure with KMBS, the Defendant subjected him to
unlawful discrimination and retaliation in the terms and conditions of his employment.

-3-

13.  Mr. Sampson repeatedly voiced his opposition to discriminatory and retaliatory treatment by KMBS but KMBS failed to take corrective action in a good faith effort to resolve Mr. Sampson's concerns.

14.  Instead, almost immediately after having voiced his opposition to the discriminatory and retaliatory treatment to which he had been subjected, Mr. Sampson was repeatedly subjected to terms and conditions of his employment to which other similar situated employees were not subjected, and then terminated from his employment.

15.  On December 10, 2019, KMBS terminated Mr. Sampson from his position with KMBS based on his race and in retaliation for his having voiced opposition to practices that he reasonably believed to be unlawful under Title VII and Section 1981.

***The Defendant's Personnel Who Played a Role in Mr. Sampson's Termination***

16.  The wrongful discriminatory and retaliatory employment practices described below were made and committed by supervisory personnel of KMBS with decision-making authority and the authority to alter Mr. Sampson's employment status, terms and conditions, with the full knowledge and authority of and/or ratification and acceptance by KMBS.

17.  The Defendant, directly and indirectly through its supervisory personnel, engaged in the wrongful retaliatory employment practices described below with malice, evil intent, and reckless indifference to the rights of Mr. Sampson under Title VII and Section 1981.

18.  Mike Dean was, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, employed by KMBS as its Area Vice President of the Las Vegas area of KMBS where Mr. Sampson worked; and had supervisory authority over Mr. Sampson, decision-making authority over his employment, and the authority to alter Mr. Sampson's employment status, terms, and conditions.

19.  Tom Reed was, at all times relevant to the incidents that form the basis of Mr. Sampson's claims set forth in this Complaint, employed by KMBS as its Branch Manager of the Las Vegas Office of KMBS where Mr. Sampson worked; and had supervisory authority over Mr. Sampson, decision-making authority over his employment, and the authority to alter Mr. Sampson's employment status, terms, and conditions.

-4-

*Discriminatory and Retaliatory Treatment of Mr. Sampson*

20.  KMBS treated Mr. Sampson disparately in connection with the terms and conditions of his employment, as more fully described below, and, upon information and belief, took the actions described below and treated Mr. Sampson disparately in those terms and conditions based on his race.

21.  Mr. Sampson was hired by the Defendant at its Las Vegas office on November 13, 2017.

22.  During his tenure with KMBS in Las Vegas, Mr. Sampson was intentionally and knowingly subjected to terms and conditions of his employment to which similarly-situated, non-African American sales representatives were not subjected; and, in that way, was deprived of the terms and conditions that were necessary for him to perform the duties of his position well and to meet his sales quota numbers.

23.  By way of example, during his tenure with KMBS in Las Vegas, Mr. Sampson was subjected to disparate treatment based on his race by Mr. Reed and Mr. Dean, including (a) failing to provide an opportunity for a promotion to positions as a "Senior Account Executive" and/or "National Account Executive," and, instead, gave such a position to a non-African-American person hired from outside KMBS; (b) taking away legal "vertical" markets from him that had previously been assigned to him, while, at the same time, taking away the "medical" vertical market from another African American sales person, Andre Duplessis, while not taking away such vertical markets from similarly-situated, non-African American sales people; (c) assigning him, along with another African American sales person, to a zip code territory that was not as lucrative as the territories to which non-African American sales people were assigned; (d) taking away accounts that should not have been taken away and not assigning accounts to him that should have been assigned to him, while not engaging in such conduct in connection with similarly-situated, non-African American sales people; (e) holding Mr. Sampson to disparate performance standards when compared with similarly-situated, non-African American sales representatives; (f) engaging in a ploy to take away Mr. Sampson's accounts as a way to erode Mr. Sampson's ability to make his sales quota numbers; and (g) not

providing the opportunity to perform certain duties that would have enabled Mr. Sampson to achieve higher sales and achieve critical measures of performance, while providing such opportunities to other, similarly-situated sales people who were not African-American.

24. By engaging in the foregoing discriminatory conduct, KMBS deprived Mr. Sampson of opportunities to sell KMBS's products and services; and, in so doing, deprived Mr. Sampson of compensation that he would have otherwise received; and, further, in so doing, treated him disparately as compared with similarly-situated, non-African American sales representatives.

25. In or around September 2019, Mr. Sampson informed KMBS's managerial personnel, including but not limited to Messrs. Dean and Reed, that he believed that he had been subjected to discrimination and unlawful retaliation by his managers and by certain coworkers; and, in response, they failed to take any prompt remedial action.

26. Having received not such prompt remedial action, Mr. Sampson also directed Messrs. Dean and Reed to forward his allegations of discriminatory treatment to KMBS's human resources manager; and, upon information and belief, they did so.

27. In or around October 2019, having still failed to receive any prompt remedial action by Messrs. Dean and Reed, Mr. Sampson raised, with KMBS's human resource manager, his claims that he had previously raised with Messrs. Dean and Reed, along with new claims, that he believed that he had been subjected to discrimination and unlawful retaliation by his managers and by certain coworkers; and, in response, KMBS's human resource manager failed to take any prompt remedial action.

28. After Mr. Sampson complained about what he reasonably believed was unlawful discrimination and retaliation, KMBS hired a firm known as Workplace Resolutions & Strategies LLC ostensibly to conduct an investigation of Mr. Sampson's claims but, in reality, to provide cover for KMBS's discriminatory and retaliatory treatment of Mr. Sampson.

29. Workplace Resolutions, upon information and belief, was employed by and acting on behalf and as an authorized agent of KMBS, with the full knowledge, approval, and direction of KMBS.

-6-

30. During the course of the investigation, Ann Fromholz, an investigator employed by Workplace Resolutions asked Mr. Sampson whether he had filed claims alleging discrimination against employers other than KMBS, without conducting an investigation of the merits of any prior such claims, reflecting an intent to discount the validity of Mr. Sampson's claims against KMBS and to cast doubt on his credibility if he had done so.

31. While that ostensible investigation was being conducted and prior to the issuance of the investigator's report, KMBS hired MegaGroup Investigations, a private investigation firm with headquarters in Las Angeles, CA, to conduct surveillance of Mr. Sampson, without his permission, on November 21, 2019 and November 22, 2019.

32. MegaGroup, upon information and belief, was employed by and acting on behalf and as an authorized agent of KMBS, with the full knowledge, approval, and direction of KMBS.

33. KMBS retained MegaGroup to conduct surveillance of Mr. Sampson for the purpose and with the intent of finding a reason, albeit a pretextual one, to terminate Mr. Sampson from his employment with KMBS.

34. On November 25, 2019, at about 7:30 a.m., Mr. Sampson sent an email to KMBS's human resources department informing KMBS that he was pursuing his claims of discriminatory treatment with the EEOC.

35. The same morning, Mr. Sampson received notification that KMBS was instituting new requirements for sales representatives to verify their in-person meetings for the prior week.

36. Upon information and belief, Mr. Reed substituted Mr. Sampson's report of his prior week's in-person meetings with a falsified report created by Mr. Reed.

37. On November 25, 2019, KMBS suspended Mr. Sampson from his position, ostensibly based on the results of the investigation conduct by MegaGroup, but, in reality, in retaliation for his having raised claims of discriminatory and retaliatory treatment that he reasonably believed were valid.

38.  KMBS used the information supplied by MegaGroup as a pretext for terminating Mr. Sampson in retaliation for his having raised claims of discrimination, which, he reasonably and objectively believed, were valid.

39.  On or about December 8, 2019, Ms. Fromholz issued a report, concluding, erroneously, that Mr. Sampson's claims that he had been subjected to discriminatory and retaliatory conduct were not supported by a preponderance of the evidence.

40.  During the course of her investigation, Ms. Fromholz sought to assist KMBS's efforts to terminate Mr. Sampson from his employment and, during the course of her investigation, ignored clear and convincing evidence of disparate treatment by KMBS and ignored false statements and documents supplied by KMBS in connection with that investigation.

41.  Also during the course of her investigation, Ms. Fromholz ignored the testimony to be provided by at least one witness, another sales representative by the name of Don Davidson, whose name Mr. Sampson had provided to her and who was listed by Ms. Framholz as someone she interviewed.

42.  On December 10, 2019, KMBS terminated Mr. Sampson from his position, allegedly for falsifying database entries concerning whether he had engaged in-person visits on November 21 and 22, 2019, when he was being surveilled without his permission by MegaGroup.

43.  The reason proffered by KMBS for terminating Mr. Sampson from his employment with KMBS was a pretext for terminating Mr. Sampson in retaliation for his having raised claims with KMBS that he, reasonably and objectively, believed constituted unlawful discrimination based on his race.

### *Mr. Sampson's Injuries and Losses*

44.  As a direct and proximate result of the wrongful termination described in the foregoing paragraphs of this Complaint, Mr. Sampson has suffered and will continue to suffer lost salary and employment benefits.

-8-

45.  Mr. Sampson, without limiting his calculation of the economic damages that he suffered as they may be more fully addressed by an expert witness, states that, as a result of the foregoing discriminatory and retaliatory conduct, he suffered lost compensation in an amount to be determined at trial.

46.  Mr. Sampson, also without limiting his calculation of the economic damages that he suffered as they may be more fully addressed by an expert witness, states that, as a result of his discriminatory and retaliatory termination by KMBS, he suffered lost compensation and employment benefits in an amount to be ascertained at trial.

47.  As a further direct and proximate result of the disparate pay described in the foregoing paragraphs of this Complaint, Mr. Sampson has also suffered nonpecuniary injury, including but not limited to emotional pain, suffering, inconvenience, and humiliation.

## CLAIMS FOR RELIEF

### COUNT I
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Discrimination Based on Race)**

48.  The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

49.  KMBS, as evidenced by its failure to take prompt, remedial action in response to the complaints raised by Mr. Sampson and by its response to his complaints and the termination of his employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and directed, ratified and approved of Mr. Sampson's discriminatory treatment.

50.  By virtue of the activities described in the foregoing paragraphs of this Complaint, KMBS intentionally discriminated against Mr. Sampson, by treating him disparately when compared with non-African American sales representatives, because of his race and, by reason of such discriminatory conduct, violated Title VII and, in particular, 42 U.S.C. § 2000e-2(a).

51.  As a direct and proximate consequence of these violations by KMBS, Mr. Sampson has been damaged and will continue to be damaged, and KMBS is liable, for his lost salary, in an amount not yet fully ascertained, plus prejudgment interest thereon.

52.  As a direct and proximate consequence of the foregoing violations by KMBS, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

53.  KMBS, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, KMBS is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, plus prejudgment interest.

**COUNT II**
**Title VII**
**42 U.S.C. § 2000e *et seq.*, as amended**
**(Retaliation)**

54.  The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

55.  KMBS, as evidenced by its failure to take prompt, remedial action in response to the complaints raised by Mr. Sampson and by its response to his complaints and the termination of Mr. Sampson's employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and directed, ratified and approved of Mr. Sampson's retaliatory termination.

56.  By virtue of the activities described in the foregoing paragraphs of this Complaint, KMBS intentionally retaliated against Mr. Sampson as described more fully above, by terminating him from his employment with KMBS, because he opposed what he reasonably and objectively believed to be a violation of Title VII; and, by reason of such retaliatory conduct, KMBS violated Title VII, and, in particular, 42 U.S.C. § 2000e-3(a).

-10-

57.  As a direct and proximate consequence of these violations by KMBS, Mr. Sampson has been damaged and will continue to be damaged, and KMBS is liable, for his lost salary and employment benefits and unreimbursed expenses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

58.  As a direct and proximate consequence of the foregoing violations by KMBS, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

59.  KMBS, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, KMBS is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, plus prejudgment interest.

**COUNT III**
**Civil Rights Act of 1866,**
**42 U.S.C. § 1981, as amended**
**(Discrimination Based on Race)**

60.  The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

61.  KMBS, as evidenced by its failure to take prompt, remedial action in response to the complaints raised by Mr. Sampson and by its response to his complaints and the termination of his employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and directed, ratified and approved of Mr. Sampson's discriminatory treatment.

62.  By virtue of the activities described in the foregoing paragraphs of this Complaint, KMBS intentionally discriminated against Mr. Sampson because of his race, by treating him disparately when compared with non-African American sales representatives, and, by reason of such discriminatory conduct, violated Section 1981.

-11-

63.  As a direct and proximate consequence of these violations by KMBS, Mr. Sampson has been damaged and will continue to be damaged, and KMBS is liable, for his lost salary, in an amount not yet fully ascertained, plus prejudgment interest thereon.

64.  As a direct and proximate consequence of the foregoing violations by KMBS, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

65.  KMBS, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, KMBS is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, plus prejudgment interest.

**COUNT IV**
**Civil Rights Act of 1866,**
**42 U.S.C. § 1981, as amended**
**(Retaliation)**

66.  The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

67.  KMBS, as evidenced by its failure to take prompt, remedial action in response to the complaints raised by Mr. Sampson and by its response to his complaints and the termination of Mr. Sampson's employment, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior, failed to make a good faith effort to comply with anti-discrimination laws, and directed, ratified and approved of Mr. Sampson's retaliatory termination.

68.  By virtue of the activities described in the foregoing paragraphs of this Complaint, KMBS intentionally retaliated against Mr. Sampson as described more fully above, by terminating him from his employment with KMBS, because he opposed what he reasonably and objectively believed to be a violation of Section 198; and, by reason of such conduct, KMBS violated Section 1981.

-12-

69.  As a direct and proximate consequence of these violations by KMBS, Mr. Sampson has been damaged and will continue to be damaged, and KMBS is liable, for his lost salary and employment benefits and unreimbursed expenses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

70.  As a direct and proximate consequence of the foregoing violations by KMBS, Mr. Sampson has also compensatory damages not including lost pay, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

71.  KMBS, through its supervisory and managerial agents, engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Mr. Sampson; and, as a result, KMBS is liable to Mr. Sampson for punitive damages, in an amount not yet fully ascertained, plus prejudgment interest.

## <u>REQUEST FOR RELIEF</u>

72.  WHEREFORE, Mr. Sampson respectfully demands judgment awarding him the following:

(a) on Count I, judgment that KMBS discriminated against Mr. Sampson based on his race, in violation of Title VII, and that he is entitled to damages from the Defendant for lost salary; compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience; and punitive damages to punish and deter KMBS and others from engaging in the same unlawful conduct, in an amount to be determined at trial, plus prejudgment interest;

(b) on Count II, judgment that Mr. Sampson was subjected to unlawful retaliation, in violation of Title VII, and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience; and punitive damages to punish and deter KMBS and others from engaging in the same unlawful conduct, in an amount to be determined at trial, plus prejudgment interest;

(c) on Count III, judgment that KMBS discriminated against Mr. Sampson based on his race, in violation of Section 1981, and that he is entitled to damages from the Defendant for lost

salary; compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience; and punitive damages to punish and deter KMBS and others from engaging in the same unlawful conduct, in an amount to be determined at trial, plus prejudgment interest;

(d) on Count IV, judgment that Mr. Sampson was subjected to unlawful retaliation by KMBS, in violation of Section 1981, and that he is entitled to damages from the Defendant for lost salary and employment benefits, compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience; and punitive damages to punish and deter KMBS and others from engaging in the same unlawful conduct, plus prejudgment interest;

(e) on Counts I through IV, judgment awarding Mr. Sampson his attorney's fees, at prevailing market rates, based on KMBS's violation of Title VII and Section 1981;

(f) prejudgment interest accrued on lost compensation that should have been paid to Mr. Sampson to the date of the Court's judgment, and post-judgment interest accrued between the date of final judgment and the full and complete satisfaction of the judgment; and

(g) such other and further relief as the Court may deem appropriate, including but not limited to reinstatement or front pay, and such other relief as is necessary to effectuate the purposes of Title VII and Section 1981.

## **JURY TRIAL DEMAND**

73.  Mr. Sampson demands a trial by jury on each of the claims set forth above in this Complaint.

-14-

1    Respectfully submitted this 9th day of December 2020:

2                                    */s/ Theresa Mains*
                                     THERESA MAINS, ESQ.
3                                    Nevada Bar No. 13373
                                     6980 O'Bannon Drive
4                                    Las Vegas, Nevada 89117
                                     Telephone: (702) 267-6500 Mobile:
5                                    (954) 520-1775
                                     Email:  theresa@theresamainspa.com
6
                                     */s/ Gregory W. Stevens*
7                                    GREGORY W. STEVENS
                                     2825 East Cottonwood Parkway
8                                    Suite 500
                                     Cottonwood Corporate Center
9                                    Salt Lake City, UT 84121-7060
                                     Telephone:  (801) 990-3388
10                                   Email:  utlaw@aol.com
11                                   (Gregory W. Stevens will comply
                                     with LR IA 11-2 within 14 days.)
12
                                     *Attorney for Plaintiff*
13                                   *Adrian A. Sampson*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-15-